1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   JOSHUA HARRELL,                          Case No. 23-cv-02210-PCP

8              Plaintiff,

9        v.                                  **ORDER DENYING MOTION TO
                                             REMAND AND GRANTING MOTION
10  CALIFORNIA STATE UNIVERSITY, et          TO DISMISS**
    al.,
11             Defendants.                    Re: Dkt. Nos. 60, 64

12

13          In February 2023, pro se plaintiff Joshua Harrell filed this civil rights lawsuit against

14  California State University (CSU), San Jose State University (SJSU), and eight individual CSU

15  employees in California state court. Defendants removed the lawsuit to this Court in May 2023.

16  Harrell now moves to remand the lawsuit and defendants move to dismiss it. For the following

17  reasons, the Court denies Harrell's motion to remand and grants defendants' motion to dismiss.

18                                  **BACKGROUND**

19          Harrell was a student at San Jose State University (SJSU). Their claims arise from two

20  distinct incidents.[1]

21          On April 20, 2022, after Harrell completed a midterm exam at SJSU's Alternative Testing

22  Center (due to their disability), defendants Sanchez-Ortega, Khanaka, Bravo, and Villavelasquez-

23  Hill allegedly unlawfully took Harrell's exam notes from them. The notes were soon returned to

24  Harrell at their professor's request before Harrell's remaining midterm exams later that day. On

25  April 28, 2022, these defendants filed an incident report and referred Harrell's conduct to the

26  Student Conduct and Ethical Development (SCED) office, which reached out to Harrell on May 5,

27  _____

28  [1] The facts here are drawn from Harrell's first amended complaint. Dkt. No. 56. Harrell's
    pronouns are they/them.

2022. Harrell separately filed a complaint with the university against defendants alleging discrimination on May 15, 2022. On May 23, 2022, defendant Hutton from the SCED office resolved the issue without a disciplinary hearing, issuing Harrell a warning.

On June 3, 2022, while Harrell was studying in a building on SJSU's campus around midnight after it had closed, Harrell was purportedly arrested for trespass by defendants Lee and Zonsius. Harrell also alleges that Lee and Zonsius placed them in handcuffs after Harrell refused to leave the building, locked Harrell inside a police vehicle, and searched Harrell's pockets and personal belongings without consent. Dkt. No. 56, at 41. Defendants released Harrell after approximately an hour. Resolution of the incident through disciplinary proceedings (including a formal hearing on November 18, 2022) took several months, and Harrell was found responsible for violating various sections of the university's student conduct code, though all criminal misdemeanor charges were dropped. While proposed sanctions included submission of a reflective paper or one year of disciplinary probation, on December 16, 2022 defendant Day, SJSU's Vice President of Student Affairs, issued Harrell only a warning.

Harrell asserts 14 claims arising from these two incidents in their first amended complaint: (1) conversion; (2) deprivation of property without due process in violation of the Fourteenth Amendment; (3) discrimination based on disability in violation of the Fourteenth Amendment's Equal Protection Clause and the Americans with Disability Act, 42 U.S.C. § 12132 (ADA); (4) retaliation based on protected First Amendment activity; (5) retaliation against opposition to unlawful activity in violation of 42 U.S.C. § 12203(a); (6) wrongful use of administrative proceedings; (7) unlawful warrantless arrest in violation of the Fourth Amendment; (8) unreasonable search and seizure in violation of the Fourth Amendment; (9) failure to encourage education by suitable means in violation of the California Constitution, Art. IX § 1; (10) denial of the right to attend a safe, secure, and peaceful campus in violation of the California Constitution, Art. I § 28(f)(1); (11) discrimination based on student status in violation of the Fourteenth Amendment's Equal Protection Clause; (12) breach of contract; (13) intentional infliction of emotional distress; and (14) arbitrary discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. Dkt. No. 56.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1       Harrell asserts claims (1), (2), and (6) against CSU, SJSU, and defendants Sanchez-Ortega, Khanaka, Bravo, and Villavelasquez-Hill. They assert claims (3), (4), and (5) against CSU, SJSU, and defendants Sanchez-Ortega, Khanaka, Bravo, Villavelasquez-Hill, and Hutton. Harrell asserts claims (7) and (8) against CSU and defendants Lee and Zonsius, and claims (9), (11), and (14) against CSU, SJSU, and defendants Lee, Zonsius, Day, and Hutton. They assert claims (10) and (13) against all defendants. Finally, they assert claim (12) against CSU, SJSU, and defendant Day.

       Harrell previously moved to remand the case in June 2023. Dkt. No. 16. This Court denied the motion in August 2023, Dkt. No. 25. In that order, the Court explained that because several of Harrell's claims (e.g., deprivation of property without due process, disability discrimination, retaliation, unlawful arrest, unlawful search and seizure, and denial of equal protection) were grounded in the U.S. Constitution and federal statutes, the Court had federal question jurisdiction over those claims. As to the remaining state law claims, the Court held that it had supplemental jurisdiction because they arose out of the same facts as the federal claims. *See* 28 U.S.C. § 1367(a).

       Defendants also previously moved to dismiss the case, arguing that Harrell's complaint violated Federal Rule of Civil Procedure 8 and improperly joined unrelated parties for unrelated events in violation of Federal Rules of Civil Procedure 18 and 20. Dkt. No. 14. Harrell separately moved to amend their complaint in November 2023. Dkt. No. 44. In January 2024, the Court addressed both motions in a single order, denying defendants' motion to dismiss and granting Harrell's motion for leave to amend. Dkt. No. 55.

       Harrell now moves to remand the case to state court for a second time, repeating many of the arguments raised in their prior motion. Dkt. No. 64.

       Defendants also move to dismiss the case for a second time, now under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that Harrell failed to exhaust judicial remedies before seeking to challenge their disciplinary proceedings; that many of the defendants are entitled to qualified, discretionary, prosecutorial, or quasi-judicial immunity; and that the first amended complaint otherwise fails to state a claim. Dkt. No. 60.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## LEGAL STANDARDS

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988). Because this civil action was removed to federal court by defendants, they bear the burden of establishing this Court's subject matter jurisdiction.

The two primary sources of subject matter jurisdiction are diversity jurisdiction and federal question jurisdiction. Diversity jurisdiction permits individuals to bring claims in federal court when the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Federal question jurisdiction permits a claim to proceed in federal court if it arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A federal court "shall have supplemental jurisdiction" over a state law claim if it is part of the "same case or controversy under Article III" as a federal law claim. 28 U.S.C. § 1367(a). For a court to exercise such supplemental jurisdiction, the "state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

A complaint that fails to establish a federal district court's subject matter jurisdiction may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). An attack on jurisdiction "can either be facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial attack assumes the truth of the plaintiff's allegations but asserts they are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Thus, such an attack may be adjudicated by the district court as it would resolve a motion to dismiss under Rule 12(b)(6). By contrast, a factual Rule 12(b)(1) motion can attack "the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly brought before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

The Federal Rules require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule

12(b)(6) motion contending that a complaint fails to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

## ANALYSIS

### I.    Harrell's Motion To Remand Is Denied.

The two primary sources of subject matter jurisdiction are diversity jurisdiction and federal question jurisdiction. The parties agree that diversity jurisdiction is not present here. Accordingly, the only possible basis for this Court's subject matter jurisdiction is federal question jurisdiction, which permits a claim to proceed in federal court if it arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Harrell argues that claims (9) and (10), for failure to encourage education by suitable means and denial of the right to attend a safe, secure, and peaceful campus, are nonremovable under the Tenth Amendment. Harrell also argues that these claims involve novel, unresolved issues of state law over which a federal district court may decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1); *Dezell v. Day Island Yacht Club*, 796 F.2d 324, 329 (9th Cir. 1986) (finding that a district court abused its discretion by maintaining supplemental jurisdiction over complex state law claims requiring a dispositive interpretation of state law).

As to Harrell's claims alleging violations of federal statutory or constitutional law, this Court has federal question jurisdiction under Section 1331. This Court also has supplemental jurisdiction over Harrell's state law claims under Section 1367(a). As the Court previously held, Harrell's state law and federal law claims all "derive from a common nucleus of operative fact" involving the April 20, 2022 and June 3, 2022 incidents. *Gibbs*, 383 U.S. at 725. That claims (9) and (10) involve purportedly novel questions of state education law does not create any Tenth Amendment issue. Such claims are not among those Congress has specifically deemed

United States District Court
Northern District of California

5

1    nonremovable, *see* 28 U.S.C. § 1445, and Harrell still "cites no case interpreting the Tenth

2    Amendment" as creating a barrier to this Court's consideration of such questions of state law. Dkt.

3    No. 25, at 2. Finally, even if Harrell's state law claims were to satisfy the bar for discretionary

4    remand under Section 1367(c), as they contend, "a federal district court with power to hear state

5    law claims has discretion to keep, or decline to keep, them under the conditions set out in §

6    1367(c)." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). District courts

7    typically decline to hear such state law claims only after the federal claims have been resolved.

8    *See, e.g.*, *Holly D. v. California Institute of Technology*, 339 F.3d 1158 (9th Cir. 2003) (ordering

9    remand of state law claims to state court after award of summary judgment for defendants on

10   federal claims given unique state law issues). Assuming that claims (9) and (10) might present

11   issues sufficiently novel to warrant remand in a different case, the Court in its discretion will

12   exercise its jurisdiction over those claims given their close relationship to the other claims

13   properly before the Court.

14          Harrell separately argues that because they are no longer a student at SJSU, their claims for

15   injunctive and declaratory relief are moot and this Court therefore lacks subject matter jurisdiction

16   over those claims. Defendants do not dispute the mootness of those requests for relief (and indeed

17   have moved for their dismissal on that basis). But because Harrell does not assert any standalone

18   claims for injunctive or declaratory relief, Harrell "is seeking not to remand a *claim* but to remand

19   a specific *remedy*" to state court. *Cabral v. Supple, LLC*, 2016 WL 1180143, *3 (C.D. Cal. Mar.

20   24, 2016) (emphasis in original). Such claim-splitting presents both textual and practical concerns.

21   "As a textual matter, nothing in § 1447(c) permits the Court to remand a claim over which it has

22   original jurisdiction." *Id.* Moreover, "splitting a claim between state and federal courts would

23   result in an incredible waste of litigation resources." *Id.* (noting the possibility of duplicative

24   discovery, motions, and trials). Additionally, the "logistics of splitting a remedy from the cause of

25   action—and having solely a remedy stayed in state court pending the outcome of a federal

26   action—is beyond the scope of this Court." *Mezzadri v. Medical Depot, Inc.*, 113 F. Supp. 3d

27   1061, 1066 (C.D. Cal. 2015).

28          Harrell here is effectively requesting that the Court split their claims by remanding only

United States District Court
Northern District of California

1  the remedies of injunctive and declaratory relief. Recognizing the textual and practical difficulties

2  associated with Harrell's position, "the Court is convinced that remanding solely a remedy is not a

3  sound approach." *Id.*

4        For these reasons, the Court denies Harrell's motion to remand their lawsuit to state court.

5  **II.  Defendants' Motion To Dismiss Is Granted.**

6        **A.  Harrell Was Not Required To Exhaust Additional Judicial Remedies.**

7        Defendants argue that claims (4) through (6) and (9) through (14), all of which arise from

8  the disciplinary proceedings pursued against Harrell, should be dismissed for failure to exhaust

9  judicial remedies. Defendants contend that Harrell's lawsuit challenges the outcomes of two

10 disciplinary actions by alleging "that Defendants violated Plaintiff's due process rights when they

11 did not hold a hearing for the first disciplinary proceeding, and for defects in the process relating

12 to the second disciplinary proceeding." Dkt. No. 60, at 15. They argue that under California law,

13 parties aggrieved by such quasi-judicial adjudications must "petition for relief in mandate in order

14 to challenge the administrative action or findings before filing a legal action [for damages]."

15 *Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose*, 174 Cal. App. 4th 339, 355

16 (2009). On this basis, defendants contend that Harrell was required to file a petition for writ of

17 mandate under California Code of Civil Procedure § 1094.5 before filing suit, and that their failure

18 to do so precludes them from pursuing the claims here. *See Gupta v. Stanford University*, 124 Cal.

19 App. 4th 407, 409 (2004) (holding that a student's failure to pursue an administrative mandate

20 precluded his civil action for damages). This is because, in defendants' view, the unchallenged

21 administrative decision now constitutes a final judgment entitled to preclusive effect under

22 California law. *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1155 (9th Cir. 2018)

23 (holding that a federal court must give preclusive effect to a state administrative decision if a

24 California court would do so).

25       Harrell responds that the two disciplinary proceedings did not possess a judicial character

26 and thus cannot have any preclusive effect. *See Pac. Lumber Co. v. State Water Res. Control Bd.*,

27 37 Cal. 4th 921, 944 (2006) ("For an administrative decision to have collateral estoppel effect, it

28 and its prior proceedings must possess a judicial character."). Harrell argues that because they

*United States District Court*
*Northern District of California*

7

1  could not subpoena and cross-examine witnesses in hearings before an impartial decisionmaker

2  and did not receive a written statement of reasons for the decisions, neither proceeding was

3  sufficiently judicial. *Do v. Regents of University of California*, 216 Cal. App. 4th 1474, 1484

4  (2013). Finally, Harrell contends that even if the proceedings were judicial, there was no final

5  decision as to many of the claims asserted here as would be required for any form of preclusion to

6  apply.

7  To determine whether federal common law grants preclusive effect to the decision of a

8  state agency, courts conduct a two-step analysis: (1) whether the state administrative proceeding

9  was conducted with sufficient safeguards to be equated with a state court judgment by satisfying

10  the relevant fairness requirements, *see United States v. Utah Construction and Mining Co.*, 384

11  U.S. 394 (1966) (requiring that an administrative agency act in a judicial capacity, resolve

12  disputed issues of fact properly before it, and provide the parties an adequate opportunity to

13  litigate); and (2) if so, whether the agency's decision would be given preclusive effect under state

14  law. *See Jamgotchian v. Ferraro*, 93 F.4th 1150, 1154 (9th Cir. 2024).

15  Defendants maintain that the disciplinary proceedings met the relevant fairness

16  requirements because they possessed a judicial character notwithstanding the limited nature of the

17  sanction. *See Knight v. South Orange Cmty. Coll. Dist.*, 60 Cal. App. 5th 854, 870–71 (2021)

18  (holding that due process standards for disciplinary proceedings vary based on the severity of the

19  sanction). In their view, because the first proceeding resolved with Harrell receiving only a

20  warning and Harrell was permitted to discuss the incident with defendant Hutton, the proceeding

21  was sufficiently judicial and met due process standards. They contend that the second proceeding

22  did involve an actual hearing and that even though the proposed sanctions were limited (a

23  disciplinary essay or a year of disciplinary probation), Harrell only received a warning in the end.

24  The problem with defendants' argument is that it depends on facts that are disputed.

25  Harrell presents evidence that they did not receive a hearing in their first disciplinary proceeding

26  and that they were not able to fully litigate the action in their second disciplinary proceeding

27  because they could not cross-examine witnesses. Harrell also suggests that they were not provided

28  with a written decision explaining the warnings received, and that defendants do not describe how

United States District Court
Northern District of California

the state agency resolved the factual disputes. Notably, defendants do not ask the Court to take judicial notice of any policies or regulations governing the disciplinary proceedings that occurred. In the absence of sufficient judicially noticeable evidence regarding the character of those proceedings, whether they were sufficiently judicial in character to trigger preclusion presents factual issues that must be resolved at summary judgment or trial rather than on a Rule 12(b)(6) motion.

Second, even if the disciplinary proceedings were considered judicial in nature, defendants do not show that the decisions would necessarily be given preclusive effect under state law. As to claims alleging violations of constitutional law under 42 U.S.C. § 1983, the Ninth Circuit has been clear that a state "agency decision has no preclusive effect [when] the agency lacked jurisdiction to decide the constitutional issues that the plaintiffs … raise." *Jamgotchian*, 93 F.4th at 1156. Nothing before the Court suggests that Harrell could have pursued their constitutional claims in the disciplinary proceedings. Harrell's constitutional claims under Section 1983 are therefore not barred by the outcome of those proceedings. *See City & Cnty. of San Francisco v. Padilla*, 23 Cal. App. 3d 388, 400 (1972) (declining to afford preclusive effect to state agency decision over which the agency lacked jurisdiction).

Harrell's state law claims and non-constitutional federal claims present a more difficult question because it is unclear on the record before the Court whether those claims could have been or were presented during Harrell's disciplinary proceedings. To the extent that Harrell's state law and non-constitutional federal claims here mirror defenses that were offered or could have been offered during the state agency proceedings, such that the claims simply amount to an appeal of the disciplinary proceedings' outcomes, they might be precluded by the state agency's decision. But claims challenging the specific manner in which Harrell's disciplinary proceedings were conducted almost certainly could not have been brought before the state agency, as they would not have ripened until after the proceedings were complete. The focus of the proceedings below was presumably on Harrell's purported misconduct rather than the alleged violations of due process that Harrell asserts here.

In the absence of clear evidence that Harrell had an opportunity to present their state law

and non-constitutional federal claims in the disciplinary proceedings, the Court cannot conclude, on this motion to dismiss, that claim preclusion applies to those claims. The Court therefore denies defendants' motion to dismiss any of Harrell's claims on the basis of claim preclusion.

### B.  Several Defendants Maintain Qualified Immunity as to the Constitutional Claims.

The individual defendants argue that they are entitled to qualified immunity. State officials are entitled to qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity exists if (1) taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, the right was clearly established in light of the specific context of the case. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009). A clearly established constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Defendants argue that Harrell fails to allege violations of clearly established constitutional rights in claims (2) through (5) against defendants Sanchez-Ortega, Khanaka, Bravo, and Villavelasquez-Hill for deprivation of due process and disability discrimination in violation of the Fourteenth Amendment as well as retaliation in violation of the First Amendment. Defendants also contend that Harrell fails to allege violations of clearly established constitutional rights in claims (7) and (8) against defendants Lee and Zonsius for unlawful arrest without a warrant and unreasonable search and seizure in violation of the Fourth Amendment. The Court agrees.

Claims (2) through (5) arise from the April 20, 2022 incident in which the defendants allegedly confiscated Harrell's exam notes. Harrell does not plead facts showing that the taking of their exam notes by individual defendants Sanchez-Ortega, Khanaka, Bravo, and Villavelasquez-Hill and the disciplinary proceedings that followed violated a clearly established constitutional right. *See Mullenix v. Luna*, 577 U.S. 7, 12–13 (2015) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."). Because Harrell cites no precedent establishing that the defendants' behavior at the testing center and subsequent disciplinary proceedings violated clearly established

constitutional rights under the Fourteenth and First Amendments (the exam notes were returned later the same day), the Court dismisses claims (2) through (4) as to these four individual defendants.[2]

Harrell's claims (7) and (8) arise from the June 3, 2022 incident in which defendants Lee and Zonsius allegedly arrested them for remaining in a campus building after hours and performed an unreasonable search and seizure of Harrell's belongings. Again, Harrell fails to plead facts or cite precedent demonstrating that this behavior violated a clearly established constitutional right. After all, officers are permitted to perform warrantless arrests as well as incident searches and seizures under the Fourth Amendment if they have probable cause to do so. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). Given that the officers requested that Harrell leave the campus building after midnight but Harrell refused, the officers at least arguably had probable cause to effectuate arrest. *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991) ("[E]ven if the officers were mistaken that probable cause to arrest … existed, they are nonetheless immune from liability if their mistake was reasonable."). Similarly, officers can conduct searches and seizures within the bounds of the Fourth Amendment incident to a lawful arrest. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 335 (2009). The Court therefore dismisses claims (7) and (8) against individual defendants Lee and Zonsius.

### C. Defendants May Not Maintain Discretionary Immunity But Do Maintain Prosecutorial or Quasi-Judicial Immunity on Harrell's State Law Claims.

Defendants also argue that they are immune from liability for Harrell's state law claims. Under California law, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov.

---

[2] While defendants argue that claim (5) alleges a constitutional violation, this claim for retaliation against opposition to unlawful activity is asserted under 42 U.S.C. § 12203, so the Court does not dismiss the claim on qualified immunity grounds. While claims (3) through (5) are also asserted against individual defendant Hutton, defendants do not argue that she is entitled to qualified immunity.

United States District Court
Northern District of California

1    Code § 820.2. Individual defendants Lee, Zonsius, Sanchez-Ortega, Khanaka, Bravo,

2    Villavelasquez-Hill, Hutton, and Day argue that they are not subject to liability for Harrell's state

3    law claims because they are public employees who acted with discretion within the constraints of

4    their job duties. CSU and SJSU argue that they also maintain such discretionary immunity because

5    "if the employee is immune under § 820.2, the public entity is similarly immune." *Widdows v.*

6    *Koch*, 263 Cal. App. 2d 228, 238 (1968).

7        The problem with defendants' argument is that they do not provide the Court with

8    judicially noticeable evidence of the various individual defendants' job duties. While defendants

9    argue that Sanchez-Ortega, Khanaka, Bravo, and Villavelasquez-Hill "were tasked with enforcing

10   the policies and procedures pertaining to" the testing center including collecting students' notes

11   after exams, defendants have not provided these policies or procedures. Dkt. No. 60, at 19.

12   Similarly, defendants contend that Hutton, Day, Lee, and Zonsius "used their discretion in

13   determining that [Harrell] was not entitled to remain in university buildings outside of their posted

14   hours of operation without prior written approval," but they provide no evidence that it is within

15   those defendants' job duties to physically remove students from campus buildings outside the

16   university's hours of operation. *Id.* Without such evidence, the Court cannot find at this stage that

17   any of the defendants maintain discretionary immunity.

18       Defendants further argue that Hutton, Day, CSU, and SJSU are entitled to prosecutorial or

19   quasi-judicial immunity for their roles in the proceedings. California law provides that "[a] public

20   employee is not liable for injury caused by his instituting or prosecuting any judicial or

21   administrative proceeding within the scope of his employment, even if he acts maliciously and

22   without probable cause." Cal. Gov. Code § 821.6. "California courts construe section 821.6

23   broadly in furtherance of its purpose to protect public employees in the performance of their

24   prosecutorial duties from the threat of harassment through civil suits." *Gillan v. City of San*

25   *Marino*, 147 Cal. App. 4th 1033, 1048 (2007). Section 821.6 is also applicable to public entities

26   through Section 815.2, which provides that "a public entity is not liable for an injury resulting

27   from an act or omission of an employee of the public entity where the employee is immune from

28   liability." Cal. Gov. Code § 815.2(b).

United States District Court
Northern District of California

Defendants contend that these defendants are immune from the state law claims arising from any acts undertaken in the investigation, preparation, or prosecution of formal student administrative proceedings. While defendants again fail to present the Court with judicially noticeable evidence concerning the disciplinary proceedings or the defendants' job descriptions, the Court finds in this instance that Harrell's complaint alleges sufficient facts about the defendants' roles in the disciplinary proceedings to determine at this stage that these four defendants were acting within the scope of their employment in conducting the disciplinary proceedings against Harrell. Harrell alleges that defendant Hutton "acted in the role of Student Conduct Administrator during both student conduct cases against plaintiff" and that defendant Day's "responsibilities include[d] issuing the final decision in student conduct cases." Dkt. No. 56, at 14–15. Harrell further describes the conversations they had with Hutton following the April 20 incident, including the ways in which Harrell had possibly violated the Student Code of Conduct. *Id.* at 27–29. Harrell also details their numerous discussions with Day for months after the June 3 incident, culminating in Day notifying Harrell of the hearing outcome (finding that Harrell violated the student conduct code) on December 16. *Id.* at 79.

Harrell's own allegations implicitly reveal Hutton and Day's job duties and show that they were acting within the scope of employment in conducting Harrell's disciplinary proceedings. Because Hutton and Day are entitled to prosecutorial immunity from the various state law claims involving the initiation and prosecution of Harrell's disciplinary proceedings, so are their public entity employers CSU and SJSU. The Court therefore dismisses these state law claims against defendants Hutton, Day, CSU, and SJSU.

### D.  Harrell Fails To Adequately Plead Conversion and Deprivation of Property.

In claims (1) and (2), Harrell alleges that the taking of their notes after the exam constituted unlawful conversion and deprivation of property in violation of due process. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *See* Cal. Civ. Code. § 3336; *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015). Harrell's conversion claim fails for two reasons. First, as Harrell concedes, the taking of their exam notes

13

United States District Court
Northern District of California

1    was done pursuant to the testing center's policies, so cannot be deemed "wrongful" without further

2    explanation. Second, after Harrell spoke with their professor following the exam, Harrell was able

3    to retrieve the exam notes in approximately an hour. Harrell does not adequately plead that they

4    suffered any concrete damages from the temporary one-hour loss of the exam notes. Instead,

5    Harrell only alleges in a conclusory manner, "Harrell was harmed. Defendants' conduct was a

6    substantial factor in causing harm to Harrell." Dkt. No. 56, at 80.[3]

7         Harrell also argues that the testing center's policy of taking students' notes after the

8    completion of an exam violates constitutional due process. To assert a due process violation for

9    deprivation of property, a plaintiff must show that (1) they possess a protected property interest as

10   defined by state law, *see Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972);

11   and (2) they were denied this property interest without due process of law. *See Shanks v. Dressel*,

12   540 F.3d 1082, 1090 (9th Cir. 2008). Regardless of whether Harrell had a property interest in their

13   exam notes as defined by California law, Harrell has failed to show that they were denied this

14   putative property interest without due process.

15        In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court laid out the relevant test

16   for assessing alleged procedural due process violations. Under this test, the Court must balance the

17   private interest at stake, the risk of erroneous deprivation and probable value of additional

18   safeguards, and the government's interest. *Id.* at 355. Here, Harrell's private interest was the one-

19   hour loss of exam notes *after* Harrell completed their exam, which is minimal when compared to

20   the university's interest in preventing cheating (e.g., by preventing students from writing down

21   and sharing exam questions). And though Harrell did not receive a full hearing before their exam

22   notes were confiscated, they were permitted to discuss the incident with defendant Hutton

23   afterwards.

24

25   [3] Harrell alleges that they "underperformed" on their later exams that day, even after receiving the

26   notes, because they "wasted about half an hour … attempting to retrieve the notes [and] had
     significantly less time to review for the following [exams]." Dkt. No. 56, at 20. But such a

27   generalized allegation without any evidence of the later scores or of how the worse performance
     was caused by the taking of their exam notes does not meet the pleading requirements to survive a

28   Rule 12(b)(6) motion. *See Ashcroft*, 556 U.S. at 664 (noting a court should not assume that legal
     conclusions in a complaint are correct unless adequately "supported by factual allegations").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      Due process does not require a predeprivation hearing in all cases. *See Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 984 (9th Cir. 1998) ("[W]hen countervailing interests require it, the State may dispense with predeprivation process."). For instance, "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). Here, the university's interest in preventing cheating justified the taking of Harrell's exam notes prior to providing them with any opportunity to be heard. After all, the Supreme Court has held in the educational context that only "an informal give-and-take between student and disciplinarian" is needed. *Goss v. Lopez*, 419 U.S. 565, 584 (1975). Harrell received this process through their later conversations with Hutton and the quick return of their notes. The Fourteenth Amendment required no more.

      The Court therefore grants defendants' Rule 12(b)(6) motion to dismiss claims (1) and (2) for conversion and deprivation of property in violation of due process.

**E.  Harrell Fails To Adequately Plead Disability Discrimination.**

      Harrell alleges that in taking Harrell's exam notes, defendants violated Harrell's right to equal protection of the laws under the Fourteenth Amendment and the Americans with Disability Act, 42 U.S.C. § 12132 (ADA). Because Harrell has a disability, they were permitted to take exams at SJSU's Alternative Testing Center rather than in a classroom. Harrell alleges that, "[b]ased on a reasonable presumption of innocence, professors at SJSU do not commit theft against students or violate the rights of students who are not disabled who take their exams directly with professors." Dkt. No. 56, at 81. In short, Harrell alleges that their exam notes were taken because Harrell took their exam at an alternative testing center rather than with professors in a classroom.

      Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make a prima facie case under Title II, a plaintiff must show: "(1) [they are] a

United States District Court
Northern District of California

qualified individual with a disability; (2) [they are] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [are] otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). To state a Fourteenth Amendment equal protection claim, a plaintiff must show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class" and that the plaintiff was treated differently from persons similarly situated. *Lam v. City and County of San Francisco,* 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012). A plaintiff may satisfy this showing by alleging four separate elements: (1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification. *Id.*

Both claims fail because Harrell does not show that they were discriminated against in any way or that their exam notes were taken "by reason of" their disability. While Harrell speculates that the notes would not have been confiscated had they taken the exam in a classroom rather than at an alternative testing center, this speculation is unsubstantiated. Harrell does not present any specific allegations that the defendants who confiscated their exam notes did so intentionally because of their disability. Rather, by Harrell's own allegations, the defendants at the testing center took Harrell's exam notes because of a policy that "the exam notes must be turned in after the exam" and due to "[testing center] policy to retain the notes when a professor requested this." Dkt. No. 56, at 19. Further, Harrell fails to identify any service, program, or activity that was denied to them by virtue of the short-term loss of their notes and fails to plead with sufficient detail any harm resulting from that loss. In the absence of such allegations, neither Harrell's Title II claim nor their equal protection claim is sufficiently pleaded.

The Court therefore grants defendants' motion to dismiss Harrell's disability discrimination claim.

**F.  Harrell Fails To Adequately Plead Retaliation Claims.**

In claims (4) and (5), Harrell alleges that defendants retaliated against them in violation of the First Amendment and 42 U.S.C. § 12203(a) after Harrell filed a complaint.

To state a claim for retaliation against activity protected by the First Amendment, a plaintiff must show that: (1) they engaged in a constitutionally protected activity; (2) the defendant engaged in specific retaliatory conduct; and (3) the plaintiff's constitutionally protected activity was a substantial or motivating factor for retaliatory conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Harrell alleges that after they objected to defendants' confiscation of their exam notes on April 20, 2022 and filed a complaint alleging discrimination with the university on May 15, 2022, defendants retaliated against them by initiating student disciplinary proceedings. Dkt. No. 56, at 83.

Harrell, however, fails to include any specific allegations substantiating their allegation that their protected First Amendment activity of filing a complaint with the university "was a substantial or motivating factor" for the initiation of student disciplinary proceedings. *Pinard*, 467 F.3d at 770. As Harrell acknowledges, in the April 28, 2022 report about the April 20, 2022 incident, defendant Sanchez-Ortega alleged that Harrell "raised their voice" and was "loud [and] disrespectful" in the testing center. Dkt. No. 56, at 25. Similarly, defendant Khanaka alleged in the report that Harrell "bec[a]me more and more upset and start[ed] talking in a very loud and argumentative manner" and was "aggressive" at the testing center. *Id.* Only after this incident report was submitted on April 28 did defendant Hutton reach out to Harrell on May 5, 2022 on behalf of the Student Conduct and Ethical Development (SCED) office, asserting that Harrell violated various sections of the Student Code of Conduct. Dkt. No. 56, at 27. By Harrell's own allegations, then, the student disciplinary proceedings were initiated *before* Harrell filed their complaint alleging discrimination with the university on May 15. These dates suggest that the initiation of disciplinary proceedings could not have been in response to Harrell's protected First Amendment activity of filing a complaint on May 15.

Harrell's statutory claim fails for the same reason. Section 12203 states, "No person shall discriminate against any individual because such individual has opposed any act or practice made

1   unlawful by this chapter or because such individual made a charge, testified, assisted, or

2   participated in any manner in an investigation, proceeding, or hearing under this chapter." 42

3   U.S.C. § 12203(a). Because the alleged chronology suggests that Harrell's disciplinary proceeding

4   began on May 5, 2022, ten days *before* Harrell submitted an investigatory complaint to the

5   university on May 15, 2022, the Court cannot find that defendants discriminated against Harrell

6   for initiating a charge against the university.

7   The Court therefore grants defendants' motion to dismiss claims (4) and (5).

8   **G.  Harrell Fails To Adequately Plead Wrongful Use of Administrative Proceedings.**

9   Harrell alleges that the SCED office wrongfully brought disciplinary proceedings after

10  relying on hearsay rather than conducting an independent investigation. To state a claim for the

11  tort of wrongful use of administrative proceedings, Harrell must allege that: (1) defendants were

12  actively involved in bringing [or continuing] the administrative proceeding; (2) the alternative

13  testing center did not conduct an independent investigation; (3) the proceeding ended in Harrell's

14  favor; (4) no reasonable person in defendants' circumstances would have believed that there were

15  reasonable grounds to bring the proceeding against Harrell; (5) defendants acted primarily for a

16  purpose other than succeeding on the merits of the claim; (6) Harrell was harmed; and (7)

17  defendants' conduct was a substantial factor in causing Harrell's harm. *See* Restatement of Torts §

18  680.

19  Harrell's allegations fail to establish that "no reasonable person in defendants'

20  circumstances would have believed that there were reasonable grounds to bring the proceeding,"

21  because the April 28, 2022 incident report created sufficient grounds to initiate proceedings

22  against Harrell. *Id.* Further, Harrell does not show that the proceeding definitively ended in their

23  favor, because Harrell ultimately received a warning from Hutton. Harrell also does not allege

24  facts demonstrating that defendants' goal in initiating the proceedings was to harass them or to

25  otherwise act for an improper purpose.

26  The Court therefore grants defendants' Rule 12(b)(6) motion to dismiss claim (6).

27  **H.  Harrell Fails To Adequately Plead Fourth Amendment Violations.**

28  In claims (7) and (8), Harrell alleges that defendants' warrantless arrest and the subsequent

United States District Court
Northern District of California

18

search and seizure of their belongings violated the Fourth Amendment. But defendants' actions were not unconstitutional if the officers had probable cause to arrest Harrell. "Probable cause exists for an arrest when there is a fair probability or substantial chance of criminal activity." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012). In other words, "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). "Mere suspicion, common rumor, or even strong reason to suspect are not enough." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994).

Defendants had probable cause to arrest Harrell because Harrell remained in a closed building after hours without permission and resisted leaving when asked, which may have constituted trespass under California law. *See Miller v. Nat'l Broadcasting Co.*, 187 Cal. App. 3d 1463, 1480 (1986) ("The essence of the cause of action for trespass is an unauthorized entry onto the land of another."). Moreover, as discussed above, search and seizure of an individual's belongings incident to a lawful arrest is not unconstitutional. *See, e.g.*, *Chimel v. California*, 395 U.S. 752, 760 (1969) ("A warrantless search incident to a lawful arrest may generally extend to the area that is considered to be in the possession or under the control of the person arrested.") (cleaned up). The Court therefore grants defendants' motion to dismiss claims (7) and (8).

**I.  Harrell Fails to Adequately Plead Education-Related Claims.**

Harrell alleges in claims (9) and (10) that defendants failed to encourage education by suitable means and that they were denied the right to attend a safe, secure, and peaceful campus.

Harrell alleges that SJSU's policy preventing students from using their key cards to enter campus buildings at any time of day (while certain SJSU staff members are permitted to do so) violated their educational rights under the California Constitution. *See* Cal. Const. Art. IX § 1 ("A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of

intellectual, scientific, moral, and agricultural improvement."). But Harrell cites no precedent suggesting that a public university must allow students to access campus buildings at all hours of the day in order to provide a "suitable means" of promoting intellectual improvement, and California precedent suggests the absence of such a right. *See, e.g.*, *Campaign for Quality Educ. v. State of California*, 246 Cal. App. 4th 896, 907 (2016) (holding that Article IX of the California Constitution does *not* create a right to education of "some quality"). The Court therefore grants defendants' motion to dismiss claim (9).

Harrell also alleges that they were subject to conditions that were not safe, secure, and peaceful on SJSU's campus because they were subject to theft at the alternative testing center, arrest in a campus building, and search and seizure after being arrested. Harrell alleges that this conduct violated the "inalienable right to attend campuses which are safe, secure, and peaceful" as enshrined in the California Constitution. Cal. Const. Art. I § 28(f)(1).

But this provision of the California Constitution was adopted as part of The Victims' Bill of Rights and "designed to strengthen procedural and substantive safeguards for victims in our criminal justice system." *Clausing v. San Francisco Unified School Dist.*, 221 Cal. App. 3d 1224, 1237 (1990). As California courts have repeatedly held, there is no private right of action under this constitutional provision because it "merely indicates principles, without laying down rules by means of which those principles may be given the force of law." *Leger v. Stockton Unified School Dist.*, 202 Cal. App. 3d 1448, 1455 (1988). Section 28 "declares a general right without specifying any rules for its enforcement. It imposes no express duty on anyone to make schools safe. It is wholly devoid of guidelines, mechanisms, or procedures from which a damages remedy could be inferred." *Id.* The *Clausing* court concluded that Section 28 is "not self-executing, in the sense that it does not provide an independent basis for a private right of action for damages." 221 Cal. App. 3d at 1237. Because Article 28 creates no private right of action, the Court grants defendants' motion to dismiss claim (10).

### J. Harrell Fails To Adequately Plead Discrimination Based on Student Status or Arbitrary Discrimination.

Harrell alleges in claim (11) that defendants discriminated against them "without a

1  legitimate governmental purpose" in violation of the Fourteenth Amendment's equal protection

2  guarantee because they are a student rather than a faculty or staff member. Dkt. No. 56, at 88.

3  Harrell further alleges in claim (14) that defendants violated equal protection by engaging in

4  arbitrary discrimination "not based on standards that equally applied to all students." *Id.* at 91.

5  　　"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

6  'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

7  direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

8  *Living Ctr.*, 472 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Unlike

9  purported governmental discrimination on the basis of race or religion which is subject to strict

10  scrutiny, *see Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 222 (1995), or on the basis of

11  gender which is subject to intermediate scrutiny, *see Craig v. Boren*, 429 U.S. 190, 197 (1976),

12  alleged discrimination on the basis of student status is subject only to rational basis review, *see*

13  *Cleburne*, 472 U.S. at 446 (applying rational basis review after declining to extend suspect

14  classifications under the Fourteenth Amendment's Equal Protection Clause to mental disability).

15  To withstand equal protection review under this test, government action that distinguishes between

16  students and others "must be rationally related to a legitimate governmental purpose." *Id.*

17  　　Here, Harrell fails to show that the purported differential treatment between SJSU students

18  and staff or faculty as it pertains to entering campus buildings is not rationally related to a

19  legitimate government purpose. For example, the university might reasonably allow cleaning staff

20  to enter buildings on campus after hours in order to provide cleaning services when students are

21  not occupying the space, and might reasonably conclude that faculty employed by the university

22  should be treated differently than students. Because Harrell does not allege facts to sufficiently

23  demonstrate that the university's policy does not serve a rational government purpose, his

24  discrimination claims (11) and (14) asserting equal protection violations must be dismissed.

25  　　　　**K.  Harrell Fails To Adequately Plead a Breach of Contract.**

26  　　Harrell alleges that defendants breached various contracts: Executive Order 1098 regarding

27  student conduct procedures; Presidential Directive 2008–02 promising to maintain confidentiality

28  of student records pursuant to the Family Education Rights and Privacy Act, 20 U.S.C. § 1232g

United States District Court
Northern District of California

1    (FERPA); and a Nondiscrimination Policy enacted in Executive Orders 1096–97. Dkt. No. 56, at

2    89. Harrell alleges that they entered these contracts with defendants by being a student at SJSU.

3         The elements of a breach of contract are: "(1) existence of the contract; (2) plaintiff's

4    performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as

5    a result of the breach." *Aton Ctr. Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1230

6    (2023). Harrell fails to assert a breach of contract claim because they do not establish the existence

7    of any contract. Namely, Harrell does not demonstrate that the various executive orders and

8    directives by the university amounted to contractually binding agreements between SJSU and

9    Harrell supported by adequate consideration. *See, e.g.*, *In re Facebook, Inc. Internet Tracking

10   Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (holding that alleging the existence of certain policies,

11   without evidence of "an exchange for a promise," does not show a contractual agreement).

12        **L.   Harrell Fails To Adequately Plead Intentional Infliction of Emotional Distress.**

13        Harrell alleges that defendants engaged in outrageous conduct that caused them severe

14   emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must

15   show: (1) outrageous conduct by the defendant; (2) the defendant intended to cause or recklessly

16   disregarded the probability of causing emotional distress; (3) the plaintiff suffered severe or

17   extreme emotional distress; and (4) actual and proximate causation of emotional distress by

18   defendant's outrageous conduct. *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 160

19   (2014). For the reasons discussed above, defendants' actions of confiscating Harrell's notes after

20   completing an exam and arresting Harrell after they were in a closed campus building do not meet

21   the high bar of extreme and outrageous conduct needed to establish a claim for intentional

22   infliction of emotional distress. *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996)

23   ("An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of

24   human decency."). Moreover, Harrell does not present evidence that defendants *intended* to cause

25   them emotional distress. The Court therefore grants defendants' motion to dismiss this claim.

26                                    **CONCLUSION**

27        For the foregoing reasons, the Court grants defendants' motion to dismiss all of Harrell's

28   claims. If Harrell so chooses, they may submit an amended complaint within 21 days of this order.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: August 16, 2024

P. Casey Pitts
United States District Judge